IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| WAYMON BURTON REED, | § § § | |
| Petitioner, | § § | |
| v. | § § | Civil Action No. 4:23-cv-110-ALM-KPJ |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, | § § § § | |
| Respondent. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant National Aeronautics and Space Administration's ("NASA") Motion to Dismiss (the "Motion to Dismiss") (Dkt. 6), to which Plaintiff Waymon Burton Reed ("Reed") filed a response (the "Response") (Dkt. 12), and NASA filed a reply (the "Reply") (Dkt. 13). For the reasons that follow, the Court recommends that the Motion to Dismiss (Dkt. 6) be **GRANTED**.

**I.    BACKGROUND**

**A.    Factual Background**

On August 5, 2015, Reed initiated an administrative claim for patent infringement with NASA by sending a letter to Charles Frank Bolden, Jr., the Administrator of NASA. Dkts. 1-1 at 2; 1-2 at 1. In the letter, Reed notified NASA that "[Reed is] the Inventor of Reed's High-Rise Emergency Rescue Egress System that is registered with the United States Patent Office under Patent Number US 7,597,175 B2." Dkt. 1-2 at 1. Reed further stated that "[t]he system that was built and used for rescuing the thirty-three miners in Chile in the Fall of 2010 appears to have been designed according to the specifications in [his] Patent." *Id.*

On August 18, 2015, the Office of General Counsel of NASA responded to Reed by (1) acknowledging receipt of his letter; (2) directing Reed to NASA's process for adjudicating claims for patent infringement, as contained in 14 C.F.R. Part 1245, subpart 2; and (3) advising Reed that for NASA to consider his claim, Reed needed to provide the information required in 14 C.F.R. 1245.202, "Contents of communication initiating claim." Dkt. 1-3 at 1.

In response to NASA's letter, Reed submitted his Claim of Infringement on October 7, 2016. Dkt. 1-4 at 1. Shortly thereafter, on November 7, 2016, Reed submitted his Amended Claim of Infringement (the "Claim"). Dkt. 1-5 at 1. Reed outlines his allegation of patent infringement in the Claim in seven paragraphs as follows:

> **14 CFR § 1245.202(a)(1) requirement:**
>
> 1. Waymon Burton Reed [hereinafter "Reed"], alleges that the National Aeronautics and Space Administration [hereinafter "NASA"] infringed upon his patented emergency rescue egress system [Patent No. US 7,597,175 B2 issued to Reed on October 9, 2009] when it devised a rescue system that was utilized in the rescue of thirty-three miners [hereinafter "The 33"] in Chile beginning on October 10, 2010. *A copy of Reed's Patent No. US 7,597,175 B2 is marked as Reed's Exhibit "A" attached.*
>
> 2. **NASA Plan Devised to Exploit Reed's Patent**
> NASA knowingly, willfully, wantonly, and maliciously exploited Reed's patent for its own purposes in its contribution to the rescue of The 33 in Chile in October 2010. Before going to Chile, NASA representatives provided a plan for rescuing The 33; such plan being based upon Reed's patented emergency rescue egress system. NASA claims falsely that it devised a rescue plan "in three days," utilizing the expertise of its own personnel. *See Exhibit "B" attached.*
>
> 3. **NASA Plan Implemented Exploiting Reed's Patent**
> Two of the major components of the rescue system devised with NASA's input, and based upon Reed's patent, were hidden behind a gigantic Chilean flag; such flag was large enough to conceal the operator and the operator's control station, as well as the drum bearing the cable that lowered and raised the rescue basket that bore each rescued miner in turn. *See Exhibit "C" attached.*
>
> 4. **NASA Covered Up Plan to Exploit Reed's Patent**
> NASA was facing budget cuts prior to its having provided Chile with a plan for rescuing The 33 that was based upon Reed's patented emergency rescue egress system. *See Exhibit "D" attached.*
>
> 5. **NASA Benefitted from Exploiting Reed's Patent**
> NASA benefited in many ways from its exploitation of Reed's patented emergency rescue egress system; not the least of which is the fact that NASA, an agency that was facing drastic budget cuts, received much publicity for its participation in the rescue of The 33, and a budget increase to accommodate NASA's ambitions for the following several years. *See Exhibit "E" attached.*

> 6. **NASA Accepted Awards for Participating in Rescue of The 33**
> NASA was quick to accept accolades for its exploitation of Reed's patented emergency rescue egress system in its participation of the rescue of The 33. *See Exhibit "F" attached.*
>
> 7. **NASA Accepted Award from President Obama for Rescue of The 33**
> NASA received special recognition from the President of the United States for its participation in the planning phase of the rescue of The 33. *See Exhibit "G" attached.*

Dkt. 1-5 at 1–2. On February 23, 2017, Reed sent a follow-up letter inquiring as to the status of his Claim. Dkt. 1-6. On May 26, 2017, Reed sent another follow-up letter stating: "To this date, [Reed has] not been contacted by NASA concerning [the Claim], nor [has he] received an answer to [his] letter of February 23, 2017." Dkt. 1-7 at 1.

On July 18, 2017, NASA sent a letter detailing its final determination (the "Denial Letter"), wherein NASA denied Reed's administrative claim of patent infringement with respect to the '175 patent. Dkt. 1-8 at 1. In the Denial Letter, NASA identified the letter as its "FINAL agency action" and provided three bases for its denial of the Claim: (1) no patent infringement within the United States; (2) no exportation of components; and (3) no claim was infringed. *Id.* at 1–3. Regarding the first basis, NASA explained that the Chilean rescue mission did not constitute a "making" or "use" within the United States as required by 35 U.S.C. § 271(a). *Id.* at 1–2. Regarding the second basis, NASA explained that the intangible suggestions provided by NASA to assist in the Chilean rescue mission did not constitute the provision of a component under 35 U.S.C. § 271(f)(1). *Id.* at 2. Regarding the third basis, NASA explained that, even if the actions had occurred within the United States, Reed's patent included claim limitations that were not present in NASA's suggested requirements for the rescue system used in the Chilean rescue mission and thus, "[a]pplying the rule that for there to be infringement, each and every limitation of a claim must be met by an accused device shows that claim 1, the sole claim of the '175 patent has not been infringed." *Id.* at 2–3. NASA further notified Reed that the statute of limitations was no longer tolled upon

3

issuance of the Denial Letter, pursuant to 35 U.S.C. § 286, and that the Denial Letter could be appealed by filing a claim for patent infringement in the United States Court of Federal Claims, pursuant to 28 U.S.C. § 1498(a). *Id.* at 4.

On January 5, 2018, Reed submitted a Request for Reconsideration of NASA Response Dated July 18, 2017 ("Request for Reconsideration") (Dkt. 1-9) to NASA. In the Request for Reconsideration, Reed asserted that NASA's Denial Letter "failed or refused to address the basis of [his] Claim." Dkt. 1-9 at 1. On January 5, 2018, Reed also submitted, in a separate letter, an update on the case to NASA and "encourage[d] NASA to address [his] Request for Reconsideration in all seriousness, and to settle with [him] without having to resort to [a] judicial remedy." Dkt. 1-15 at 1. On June 27, 2018, Reed sent a letter to NASA requesting that NASA address his Request for Reconsideration. *See* Dkt. 1-16. On March 19, 2019, Reed submitted a Second Request for Reconsideration of NASA Response Dated July 18, 2017, to Reed's Claim of Infringement ("Second Request for Reconsideration") (Dkt. 1-17), wherein Reed "reurge[d] NASA to answer [the] Request for Reconsideration." Dkt. 1-17 at 1. On April 5, 2019, Reed amended his Second Request for Reconsideration, wherein he "request[ed] that NASA provide [him] with an Answer to [his] Request for Reconsideration within thirty [30] days of [NASA's] receipt of this letter." Dkt. 1-18 at 1–2. On May 9, 2019, NASA responded by letter to the amended Second Request for Reconsideration and stated that, "[b]ecause our letter of July 17, 2017[,] was a FINAL Agency Action expressing NASA's denial of the [Claim], no further consideration will be given to the claim." Dkt. 1-19.

**B.     Procedural Background**

Reed filed the Petition for an Administrative Writ of Mandamus Directed to NASA on Behalf of Petitioner Waymon Burton Reed with Memorandum and Declaration in Support (the

"Petition") (Dkt. 1) on February 10, 2023. In the Petition (Dkt. 1), Reed alleges that "NASA has failed or refused to make responsive answers to allegations as set forth in numbers 1 through 7 of his Claim" in violation of the Due Process Clause of the Fifth Amendment and Rule 8(b)(2) of the Federal Rules of Civil Procedure. Dkt. 1 at 5. Reed further argues that, because NASA failed to specifically respond to paragraphs 1 through 7 of the Claim, the Denial Letter is not a "final action" and constitutes a failure to act under 5 U.S.C.§ 551(13). *Id.* at 5–6. Thus, Reed argues that "the court has jurisdiction to hear his petition for [an] administrative writ of mandamus[,] and [he] is entitled to the relief requested herein, including issuance of the writ that will void and set aside NASA's 'response letter' dated July 18, 2017 . . . , as well as to declare that such letter does not toll the statute per 35 U.S.C. § 286." *Id.* at 19 (italics omitted).

In the Motion to Dismiss (Dkt. 6), NASA argues: (1) the Petition (Dkt. 1) should be dismissed because the Federal Rules of Civil Procedure do not apply to NASA's administrative actions; (2) Reed is not entitled to a mandamus for failure to act, unreasonable delay, or unlawful actions because there was a final agency action; and (3) any appeal of a patent infringement claim would occur in the United States Court of Federal Claims and, because the alleged infringement took place in 2010, the claim is time-barred. Dkt. 6 at 1–2.

In the Response (Dkt. 12), Reed argues that his right to due process was infringed because NASA "did not employ any decision-making process other than issuing a 'response letter,' dated July 18, 2017, and merely stated that it was a 'FINAL agency action.'" Dkt. 12 at 3. Reed further argues that this Court has jurisdiction over the Petition (Dkt. 1) under 5 U.S.C. §§ 702, 706. *Id.* at 9–10. Finally, Reed argues that the Claim was timely submitted because Reed filed the Claim with NASA on October 7, 2016, within the six-year statute for submitting his Claim. *Id.* at 10.

In the Reply (Dkt. 13), NASA argues that the Denial Letter followed NASA's regulations

for making determinations regarding claims of patent infringement as set forth in 14 C.F.R. § 1245.205. Dkt. 13 at 1. NASA further argues that Reed has not exhausted all other avenues for relief, as required for a mandamus, because Reed did not file a claim in the United States Court of Federal Claims before the statute of limitations expired. *Id.* at 2.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "In evaluating motions to dismiss filed under Rule 12(b)(6), the court 'must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). "Further, '[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are "not bound to accept as true 'a legal conclusion couched as a factual allegation.'" *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether the plausibility standard has been met is a 'context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### III.   ANALYSIS

**A.   Applicability of the Federal Rules of Civil Procedure**

In the Petition (Dkt. 1), Reed asserts that "NASA was required to make answers that are responsive to allegations set forth in Reed's Claim" in accordance with Rule 8 of the Federal Rules of Civil Procedure. Dkt. 1 at 12. NASA contends that it was not required to follow the Federal Rules of Civil Procedure in rendering its decision on an administrative settlement. *See* Dkt. 6 at 4. The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts." FED. R. CIV. P. 1. Reed's Claim initiated an administrative proceeding; specifically, a claim for administrative settlement of patent infringement with NASA. *See* Dkt. 1-3. The Administrative Procedures Act ("APA") and the rules outlined therein govern the procedure of Reed's administrative proceeding with NASA—not the Federal Rules of Civil Procedure. *See* 5 U.S.C. § 552 (a)(1)(C) ("Each agency shall separately state and currently publish . . . rules of procedure . . . as to the scope and contents of all papers, reports, or examinations."). Thus, to the extent that the Petition (Dkt. 1) relies on the Federal Rules of Civil Procedure to state a claim, the Court recommends that the Motion to Dismiss (Dkt. 6) be granted.

B.     **Mandamus under the Administrative Procedures Act**

NASA brings its Motion to Dismiss (Dkt. 6) pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Specifically, NASA argues that it issued a "Final Agency Action" and thus, Reed is not entitled to mandamus under the APA. Dkt. 6 at 1. In reviewing the Petition (Dkt. 1) and attached documents, the Court agrees that there are no plausible facts that Plaintiff could allege that would entitle him to a mandamus under the APA.

Pursuant to 28 U.S.C. § 1651(a) "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Further, under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus 'is an extraordinary remedy for extraordinary causes.'" *In re United States ex rel. Drummond*, 886 F.3d 448, 449 (5th Cir. 2018) (per curiam) (citing *United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc)). A plaintiff who seeks relief for agency action under the Mandamus Act and the APA must make a showing that there is "(1) a clear right to relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy." *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 825 (S.D. Tex. 2008) (quoting *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998)). "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

The APA states that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. "The Supreme Court has long taken a

8

pragmatic approach to finality." *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 441 (5th Cir. 2019) (cleaned up). "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citation omitted) (first quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); and then quoting *Port of Bos. Marine Terminal Ass'n. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Thus, the Court must first determine whether the Denial Letter issued by NASA was a final agency action.

NASA, pursuant to its power to make rules in the administration of its functions, has set forth policies and procedures for the purpose of settling claims of patent infringement asserted against NASA prior to the filing of such case in the United States Court of Federal Claims. 14 C.F.R. § 1245.200–01; 51 U.S.C § 20113; *see also* 22 U.S.C. §§ 1498, 2356; Claims for Patent and Copyright Infringement, 77 Fed. Reg. 14686 (Mar. 13, 2012), 2012 WL 770025. To initiate the settlement procedures, the party asserting the patent infringement must submit the claim to NASA, in writing, and include (1) an allegation of infringement; (2) a request for compensation, either expressed or implied; (3) a citation to the patent alleged to be infringed; (4) a sufficient designation to permit identification of the accused subject matter; and (5) a designation of at least one claim of each patent alleged to be infringed. 14 C.F.R. § 1245.202. Once a claim has been initiated, "[NASA's] General Counsel, or designee, shall investigate and administratively settle, deny, or otherwise dispose of each claim." *Id*. § 1245.205(b). When a claim is denied, NASA shall notify the claimant and provide the claimant with the reasons for denying the claim. *Id.*

This process was followed here. Reed filed his Claim with NASA by submitting in writing the information specified in 14 C.F.R. § 1245.202. *See* Dkt. 1-5. NASA then investigated Reed's Claim and issued the Denial Letter, detailing NASA's reasons for denying the claim pursuant to 14 C.F.R. § 1245.205. *See* Dkt. 1-8. In the Denial Letter, NASA states: "We have completed our investigation . . . . This is a FINAL agency action and constitutes a DENIAL of the subject administrative claim for patent infringement." *Id.* Because the Denial Letter marks the consummation of NASA's investigation into Reed's claim and establishes that NASA would not pursue settlement, the Denial Letter is a final agency action.

The Court may only issue a writ to NASA regarding the Denial Letter if Reed has exhausted all other avenues of relief. *See Heckler*, 466 U.S. at 616; 5 U.S.C. § 704. That is not the case here. Reed had an avenue to seek a remedy for the denial of settlement by NASA and that was to file a claim for patent infringement in the United States Court of Federal Claims. *See* 28 U.S.C. § 1498; *see also Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell*, 399 F.2d 913, 915 (5th Cir. 1968) (affirming district court's decision to dismiss an action for lack of subject matter jurisdiction when the patent was used for the government and, hence, the sole remedy was by an action against the United States in the Court of Federal Claims). In the Denial Letter, NASA advised Reed that "[a]n appeal of this decision may be made by filing a claim for patent infringement in the United States Court of Federal Claims." Dkt. 1-8 at 4. Reed apparently chose not to pursue this course of action. Because Reed fails to show that he has exhausted all other avenues of relief related to the Denial Letter, the Motion to Dismiss (Dkt. 6) should be granted.

C.    **Subject Matter Jurisdiction**

1.    **Patent Infringement Claim**

Finally, NASA asserts that "[e]ven if the Court construes the Complaint as an [sic] alleging patent infringement, it must be dismissed as time-barred and jurisdiction for patent infringement is in the Federal Court of Claims." Dkt. 6 at 6. The Court does not construe the Petition (Dkt. 1) as alleging a claim of patent infringement. Reed states that he is "mov[ing] the Court for an Administrative Writ of Mandamus" and the relief requested by Reed is consistent with mandamus relief—a court order directing NASA to complete certain actions related to Reed's administrative claim. *See* Dkt. 1 at 1, 20–21. Nevertheless, to be clear, the Court does not have jurisdiction over patent cases where the United States government uses, makes, or sells a patented invention without the permission of the patent holder. 28 U.S.C. § 1498. Jurisdiction for such cases lies exclusively with the United States Court of Federal Claims. *See id*. Thus, the Court lacks subject matter jurisdiction for any claim of patent infringement that Reed has attempted to assert outside of his requests for a writ of mandamus or judicial review under the APA. [1]

2.    **Due Process Claim**

In the Petition (Dkt. 1), Reed asserts that he has suffered a "due process injury" because NASA's Denial Letter "is not a responsive pleading and, therefore, does <u>NOT</u> constitute an answer as mandated per FRCP Rule 8(b)." Dkt. 1 at 5 (italics omitted). As discussed above, the Federal Rules of Civil Procedure do not govern administrative proceedings. *See supra* Section III.A. In the

---

[1] Further, any patent infringement claim asserted by Reed would be time-barred. 35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint."). The alleged patent infringement occurred in the Fall of 2010. Reed initiated a patent infringement claim with NASA on August 5, 2015, tolling the statute of limitations. *See* 35 U.S.C. § 286 ("In the case of claims against the United States Government for use of a patented invention, the period before bringing suit, up to six years, between the date of receipt of a written claim for compensation by the department or agency of the Government having authority to settle such claim, and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall not be counted as part of the period referred to in the preceding paragraph."). NASA issued its Denial Letter on July 28, 2017, ending the toll. Reed filed the Petition on February 10, 2023.

11

Response (Dkt. 12), Reed asserts that NASA "did not employ any decision-making process" and thus, NASA violated his due process of law because "Reed's allegations in his Claim are not addressed with discrete answers either in any administrative proceedings or in said [Denial Letter]." Dkt. 12 at 1–3. NASA did not address Reed's due process claim in the Motion to Dismiss (Dkt. 6) or the Reply (Dkt. 13). To the extent that Reed is asserting a distinct cause of action for due process, the Court should dismiss it for lack of subject matter jurisdiction.

Because Reed asserts that his right to due process guaranteed by the Fifth Amendment was violated by NASA, Plaintiff must establish that there has been a waiver of NASA's sovereign immunity. *See Villarreal v. Horn*, 203 F. Supp. 3d 765, 774 (S.D. Tex. 2016) ("As a general jurisdictional statute, 28 U.S.C. § 1331 'does not provide a general waiver of sovereign immunity.'" *Belle Co. v. U.S. Army Corps of Eng'rs*, 761 F.3d 383, 395 (5th Cir. 2014) (quoting *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir.1994)). "Plaintiffs have the burden to establish that sovereign immunity has been waived." *Id.* (citing *Taylor–Callahan–Coleman Counties Dist. Adult Probation Dep't v. Dole*, 948 F.2d 953, 956 (5th Cir.1991)). "The APA waives sovereign immunity of the United States in certain circumstances for claims seeking relief other than monetary damages." *Id.* (citing *Belle Co.*, 761 F.3d at 387). The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, APA review is limited to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

As discussed above, NASA, following the decision-making process set forth in its regulations, issued the Denial Letter, a final agency action. *See supra* Section III.B. A final agency action is only reviewable if "there is no other adequate remedy in a court." 5 U.S.C. § 704. Reed

had an adequate remedy for his claim of patent infringement, which was to file a claim of patent infringement in the United States Court of Federal Claims. 28 U.S.C. § 1498. Reed has not argued that suit in the Court of Federal Claims is inadequate to provide relief for his claim of patent infringement. *See Villarreal v. Horn*, 203 F. Supp. 3d 765, 774 (S.D. Tex. 2016) (finding that Plaintiffs did not meet their burden to show that the remedy available was inadequate such that relief under the APA was justified). Further, although the statute of limitations may have now lapsed, Reed's failure to pursue the adequate remedy available to him does not vitiate its existence. *See Cambranis v. Pompeo*, No. 19-cv-238, 2020 WL 1447380, at *12 (W.D. Tex. Mar. 24, 2020) (finding that the court did not have jurisdiction under the APA to consider Plaintiff's constitutional claim because the remedy of filing suit in federal court was adequate, even though the statute of limitations for filing such suit had lapsed). Thus, this Cout lacks subject matter jurisdiction over Reed's due process cause of action. *See Castro v. Freeman*, No. 09 Civ. 208, 2011 WL 11535494, at *6 (S.D. Tex. Nov. 22, 2011) (finding that the court lacked subject matter jurisdiction over Plaintiff's cause of action under the APA because Plaintiff had another legitimate vehicle by which to seek review of the agency's final decision).

### IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion to Dismiss (Dkt. 6) be **GRANTED**. The Court further recommends that Reed's claim for mandamus against NASA be **DISMISSED WITH PREJUDICE** and that any other purported claim asserted by Reed against NASA be **DISMISSED WITHOUT PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 9th day of January, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE